IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § | 1:18-CR-410-RP-17 |
| CARLOS ALBERTO ZAMUDIO, | § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant Carlos Alberto Zamudio's ("Zamudio") Motion to Withdraw Guilty Plea, (Dkt. 545), and the Government's response, (Dkt. 558). Having reviewed the briefing, the record, and the relevant law, the Court will deny Zamudio's motion.

**I. BACKGROUND**

On December 18, 2018, Zamudio was charged with conspiracy to possess with intent to distribute 1 kilogram or more of cocaine in violation of 21 U.S.C. § 846. (Dkt. 67). This charge carries a statutory range of punishment of 5 to 40 years. (Mot., Dkt. 545, at 1; Resp., Dkt. 558, at 1). After the Government withdrew its Motion to Detain, (Dkt. 59; Dkt. 136), the Court, on January 31, 2019, ordered that Zamudio be released. (Dkt. 139). Zamudio and the Government subsequently reached a plea agreement whereby the Government agreed to recommend a sentence of not more than 24 months imprisonment and to modify the indictment so that the mandatory minimum five-year sentence would no longer apply. (Mot. Dkt. 545, at 1–2; Resp., Dkt. 558, at 1–2). On October 30, 2019, the Court accepted Zamudio's plea. (Dkt. 356). On November 6, 2019, the United States Probation Office filed the initial presentence report which calculated a sentencing guideline range of 37 to 46 months. (Dkt. 360). On November 14, 2019, Zamudio filed an unopposed Motion to Substitute Attorney, (Dkt. 370), which was granted the next day, (Dkt. 371).

On January 23, 2020, Zamudio filed an objection to the presentence report because the drug quantity was, according to Zamudio, improperly included in the presentence report. (Obj., Dkt. 466-2; Mot., Dkt. 545; Resp., Dkt. 558). On February 12, 2020, Zamudio filed an unopposed motion to continue sentencing, (Dkt. 468), which was granted the next day, (Dkt. 469). Since then, due to the Covid-19 pandemic, the Court has twice continued the trial setting for all defendants in this case. (Dkt. 498; Dkt. 525). Zamudio now asks to withdraw his plea of guilty. (Mot., Dkt. 545).

## II. LEGAL STANDARD

A defendant may withdraw a guilty plea after the district court has accepted it but prior to sentencing it if she "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). To make that determination, courts in the Fifth Circuit employ the seven-factor *Carr* test: (1) whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice if the withdrawal motion were granted; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether or not close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources. *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984). If applicable, courts also consider the reason why a defendant delayed making her request to withdraw her guilty plea. *Id.* at 344. However, these factors are not exclusive, and courts ultimately must examine the totality of the circumstances. *Id.* (citing *United States v. Morrow*, 537 F.2d 120, 146 (5th Cir. 1976)).

## III. ANALYSIS

Zamudio seeks to withdraw his guilty plea for several reasons. First, Zamudio claims that he did not adequately understand the evidence against him. When he met with appointed counsel to review discovery, he "was not permitted to take the discovery home" and was told that the original recordings of phone calls were not available. (Dkt. 545, at 2). According to his new counsel,

appointed counsel provided incorrect information to Zamudio because the Government provided him (retained counsel) with the original recordings which he then reviewed with Zamudio. (*Id.* at 2–3). Zamudio argues that hearing the original recordings, in Spanish, was significantly different than reading transcripts of those calls. (*Id.* at 3). Had he "heard the recordings prior to pleading guilty, he would not have pleaded guilty." (*Id.*). Related, Zamudio asserts that when he inquired about the recordings or other evidence, "he was met with stiff resistance from appointed counsel." (*Id.*). Zamudio states that he felt intimidated by appointed counsel and implies that he felt pressured to "take the deal." (*Id.*).

Second, Zamudio contends that he was not given adequate opportunity to review the plea agreement. (*Id.*). Specifically, after meeting with appointed counsel in his office for one hour to review the agreement, Zamudio says he asked to take the plea agreement home to review it and was told that he could not. (*Id.*). Zamudio also complains that appointed counsel's review of the plea agreement with him was not sufficient because it was not reviewed provision-by-provision and the factual basis was "never reviewed or highlighted." (*Id.* at 4). According to Zamudio, he heard the factual basis for the first time at the "change-of-plea hearing [and] felt pressured by appointed counsel to agree." (*Id.*).

Finally, Zamudio contends that the reason he retained counsel was to withdraw his guilty plea and that the process of discussing his desire to withdraw his guilty plea with his retained counsel took time. (*Id.*). He has been conferring with retained counsel since November 2019 about whether to withdraw his guilty plea, which his retained counsel admits has been a "difficult issue . . . given the apparently favorable terms of the plea agreement and the distinct (favorable) possibility of a non-custodial sentence under the current deal." (*Id.*). Zamudio explains that his delay in filing his motion to withdraw his guilty plea is attributable to his retained counsel "reviewing his ethical obligations . . . and revisiting the issue several times with Mr. Zamudio [who] has been steadfast in

his desire to withdraw his guilty plea." (*Id.*). Zamudio therefore asks that his delay not be held against him and argues that his delay has not prejudiced the Government because he has co-defendants with unresolved cases. (*Id.*).

The Court will step through each of the *Carr* factors and consider the totality of the circumstances to determine whether Zamudio may withdraw his guilty plea.

### 1. Whether Zamudio Asserts Innocence

The first *Carr* factor is whether the defendant has asserted her innocence. 740 F.2d at 343–44. Zamudio has not claimed innocence. Rather, he asserts that after having listened to the original recordings, he would not have pleaded guilty. (Mot., Dkt. 545, at 2–3). Because Zamudio has not claimed innocence, this factor weighs against Zamudio and in favor of denying his motion to withdraw his guilty plea.

### 2. Whether the Government Would Suffer Prejudice

Next, the Court considers the second *Carr* factor: whether the Government would suffer prejudice should the Court permit Zamudio to withdraw his guilty plea. 740 F.2d at 343–44. Zamudio argues that the Government would not suffer prejudice because he has co-defendants with unresolved cases. (Mot., Dkt. 545, at 4). The Government argues it would suffer prejudice because (1) it has secured plea agreements with all of Zamudio's co-defendants; (2) it does not know whether a confidential informant and other potential cooperating defendants are available; and (3) at least one co-defendant is prepared to testify against Zamudio. (Resp., Dkt. 558, at 4–5). The Government then declares that "[w]hile this factor weighs in favor of the Government, other than the passage of time, this reason is not insurmountable. Regardless, *Carr* makes clear that the absence of prejudice to the Government does not necessarily justify reversing the district court's decision to deny a motion to withdraw a guilty plea." (*Id.* at 5) (citing *Carr*, 740 F.2d at 344). Because the Government is not claiming that a confidential information and other potential cooperating defendants are unavailable

4

or even presumed to be unavailable and the Government does not explain how the fact that Zamudio's co-defendants' have plea agreements in place prejudices the Government in the prosecution of their case against Zamudio, the Court considers this factor to be neutral.

### 3. Whether Zamudio Delayed Filing his Withdrawal Motion

The third *Carr* factor—whether Zamudio delayed filing this withdrawal motion—presents a closer question. 740 F.2d at 343–44. Zamudio admits there has been delay, (Mot., Dkt. 545, at 4), but attempts to justify his delay with three reasons: (1) he needed to retain new counsel; (2) once he retained new counsel, he needed to listen to and consider the original recordings in Spanish; and (3) after reviewing the recordings, he needed to discuss his desire to withdraw his guilty plea with his retained counsel who explains that he had to review his ethical obligations and revisit the issue several times with Zamudio. (*Id.* at 2–4). The Government counters that 11 months elapsed from the time the initial presentence report was published and when Zamudio "made his intentions known to the Court" and that Zamudio's rationale for his delay is not valid. (Resp., Dkt. 558, at 5–6). While the Court acknowledges that shorter durations of delay have been held to weigh against allowing withdrawal and that Zamudio did not alert the Court of his concerns for some time, the Court turns its attention to the reasons for Zamudio's delay. *See Carr*, 740 F.2d at 344.

For the sake of argument, the Court discounts the time from Zamudio's guilty plea until he obtained new counsel and looks more closely at the almost ten-month delay from the time Zamudio substituted his counsel in November 2019 and filed his motion to withdraw his guilty plea in September 2020. (Dkt. 371; Dkt. 545). During that time, Zamudio filed two motions to continue. In his first motion to continue, Zamudio stated that his new counsel needed additional time to prepare for sentencing since he had recently become counsel for Zamudio. (Dkt. 373). In his second motion to continue, Zamudio asked for a short continuance because his counsel missed the second notice resetting the sentencing to a date that created a conflict for counsel. (Dkt. 468). Although Zamudio

provided the Court with legitimate reasons to continue his sentencing in each of those motions, Zamudio did not indicate that he would file a motion to withdraw his guilty plea, that he was considering filing such a motion, or even that he and his counsel were having ongoing discussions about his guilty plea. After Zamudio's motions to continue, the Court sua sponte continued Zamudio's sentencing twice due to the Covid-19 pandemic. (Dkt. 498; Dkt. 525). Considering that Zamudio waited almost 10 months after securing new counsel, that during that time Zamudio did not indicate that he may file a motion to withdraw his guilty plea, and that Zamudio was on pretrial release since his arrest and does not claim he was unable to meaningfully meet with retained counsel, the Court finds that this factor weighs against Zamudio and in favor of denying his motion to withdraw his guilty plea.

### 4. Whether Withdrawal Would Substantially Inconvenience the Court and 7. Whether Withdrawal Would Waste Judicial Resources

The Court considers the fourth *Carr* factor—whether withdrawal would substantially inconvenience the court—in conjunction with the seventh *Carr* factor—whether withdrawal would waste judicial resources. 740 F.2d at 343–44. Given that the Court cannot currently empanel a jury for trial and does not foresee being able to do that in the short term due to the Covid-19 pandemic, the Court does not find that withdrawal would substantially inconvenience the Court or waste judicial resources. These two factors are thus neutral.

### 5. Whether Close Assistance of Counsel Was Available

The fifth *Carr* factor is whether Zamudio had close assistance of counsel available. *Carr*, 740 F.2d at 343–44. The Fifth Circuit has determined that close assistance of counsel under Federal Rule of Criminal Procedure 11(d)(2)(B) and "constitutionally ineffective assistance of counsel are distinct issues." *United States v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009). Rather than making a constitutional determination, the Court makes a "fact-intensive inquiry" to evaluate whether Zamudio had close assistance of counsel. *Id.* Zamudio argues that due to failures of his appointed

counsel, he was unable to listen to and consider the original recordings prior to deciding whether to agree to a guilty plea and that if he had, he would not have pleaded guilty. (Mot., Dkt. 545, at 2–4). Zamudio asserts that when he inquired about the recordings or other evidence, "he was met with stiff resistance from appointed counsel." (*Id.* at 3). Zamudio states that he felt intimidated by appointed counsel and implies that he felt pressured to "take the deal." (*Id.*). Zamudio also complains that appointed counsel's review of the plea agreement with him was not sufficient because it was not reviewed provision-by-provision and the factual basis was "never reviewed or highlighted." (*Id.* at 4). According to Zamudio, he heard the factual basis for the first time at the "change-of-plea hearing [and] felt pressured by appointed counsel to agree." (*Id.*).

The Government contends that Zamudio stated he was satisfied with the assistance of his appointed counsel at his plea hearing and pleaded pursuant to a negotiated plea agreement and that those facts weigh in favor of finding close assistance of counsel. (Resp., Dkt. 558, at 8) (citing *McKnight*, 570 F.3d at 646–47; *United States v. Rodriguez*, 306 Fed. Appx. 135, 138 (5th Cir. 2009) (unpublished) (finding no abuse of discretion in denial of motion to withdraw, noting that the defendant "indicated that he was satisfied with the representation of counsel during his plea colloquy"); *United States v. Morris*, 85 Fed. Appx. 373, 374 (5th Cir. 2003) ("There is no support in the record for [the defendant's] assertion that he did not have close assistance of counsel. [The defendant] stated at the guilty plea hearing that he was satisfied with his counsel's representation and that his counsel had discussed his entire case with him.")).

The Court agrees that the record in this case and Zamudio's own allegations contradict his claim that he was deprived of counsel's close assistance. At the plea hearing, United States Magistrate Judge Andrew Austin found that Zamudio consented to enter his guilty plea "with the advice of his attorney." (Dkt. 338, at 1). Zamudio's counsel negotiated his plea agreement, represented him in his detention hearing, and filed several motions to continue. *See, e.g.*, *United States*

7

*v. Steele*, 2013 WL 4737238, at *5 (W.D. Tex. Sept. 3, 2013), aff'd, 582 F. App'x 453 (5th Cir. 2014) ("The Court is also persuaded that Steele had close assistance of counsel available to him. McCrum subpoenaed the evidence Steele asked him to obtain; filed four motions to continue; filed a motion in limine prior to trial; responded to one of the Government's motions in limine; correctly advised Steele regarding the sentence he would receive if he was convicted; and negotiated a favorable Plea Agreement.").

Moreover, while Zamudio's claims about his appointed counsel may be accurate and disappointing, Zamudio does not allege that his appointed counsel made a mistake that rises to the level of showing Zamudio failed to receive close assistance of counsel. *See, e.g., United States v. Arbuckle*, 390 F. App'x 412, 419 (5th Cir. 2010) ("[C]ounsel's failure to correct the misstatement in the plea agreement or during the plea hearing, by itself, does not indicate that Arbuckle did not receive close assistance of counsel at the time he entered his plea."); *United States v. Pasillas*, No. EP-18-CR-1510-PRM-1, 2018 WL 7680628, at *5 (W.D. Tex. Oct. 9, 2018) ("Aside from possibly alleging that her attorney failed to advise her of the minimum term of imprisonment, Defendant does not allege any other facts demonstrating she lacked close assistance of counsel."). Overall, the Court finds that this factor weighs against Zamudio and in favor of denying his motion to withdraw his guilty plea.

### 6. Whether the Original Plea Was Knowing and Voluntary

Finally, the Court considers the sixth *Carr* factor—whether the original plea was knowing and voluntary. 740 F.2d at 343–44. Zamudio claims that he did not adequately understand the evidence against him. When he met with appointed counsel to review discovery, he "was not permitted to take the discovery home" and was told that the original recordings of phone calls were not available. (Dkt. 545, at 2). After he gained access to the original recordings through his retained counsel, Zamudio argues that hearing the original recordings in Spanish was significantly different

than having read the transcripts of those calls. (*Id.* at 3). Had he "heard the recordings prior to pleading guilty, he would not have pleaded guilty." (*Id.*). Zamudio states that he felt intimidated by appointed counsel and implies that he felt pressured to "take the deal." (*Id.*). Specifically, Zamudio contends that he was not given adequate opportunity to review the plea agreement. (*Id.*). After meeting with appointed counsel in his office for one hour to review the agreement, Zamudio says he asked to take the plea agreement home to review it and was told that he could not. (*Id.*). According to Zamudio, he heard the factual basis for the first time at the "change-of-plea hearing [and] felt pressured by appointed counsel to agree." (*Id.*).

Whether a plea is knowing depends on whether the defendant understood the consequences of his plea; whether it was voluntary depends on whether the plea was induced by threats or improper promises. *See United States v. Hernandez*, 234 F.3d 252, 254 n. 3 (5th Cir. 2000). Taking Zamudio's allegations as true, his appointed counsel may have given Zamudio incorrect information or could have provided more thorough counsel and discussion about the plea agreement, but Zamudio does not allege that he did not understand the consequences of his plea nor does he allege that anyone threatened him or made an improper promise with respect to his plea. Although Zamudio contends that his appointed counsel pressured him into accepting a plea deal, Zamudio appeared before United States Magistrate Judge Andrew Austin for his plea hearing and, based on Zamudio's affirmances, Judge Austin found that Zamudio's plea was made "freely and voluntarily" and that he understood "the nature of the charge against him and possible penalties." (Dkt. 338, at 2); *see United States v. Herrod*, 595 F. App'x 402, 412 (5th Cir. 2015) (finding that defendant's affirmations during his plea hearing demonstrated that his plea was freely and voluntarily made). This factor weighs in the Government's favor.

Finally, based on the totality of the circumstances, the Court will deny Zamudio's motion to withdraw his guilty plea. While some factors are neutral, the other factors weigh against Zamudio

and no factor weighs in favor of Zamudio. Therefore, Zamudio has failed to show a "fair and just reason" to change his guilty plea.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Zamudio's Motion to Withdraw Guilty Plea, (Dkt. 545), is **DENIED**. The Court will set a sentencing date by separate order.

**SIGNED** on February 12, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE