<pre>
                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
                          AUSTIN DIVISION

UNITED STATES OF AMERICA  ) Docket No. A 18-CR-410(17) RP
                          )
vs.                       ) Austin, Texas
                          )
CARLOS ALBERTO ZAMUDIO    ) May 14, 2021


                     TRANSCRIPT OF SENTENCING
              BEFORE THE HONORABLE ROBERT L. PITMAN


APPEARANCES:

For the United States:    Mr. Douglas W. Gardner
                          Assistant U.S. Attorney
                          903 San Jacinto Boulevard,
                          Suite 334
                          Austin, Texas 78701



For the Defendant:        Mr. Victor A. Arana
                          Law Office of Thomas C. Fagerberg
                          907 Rio Grande Street
                          Austin, Texas 78701



Court Reporter:           Ms. Lily Iva Reznik, CRR, RMR
                          501 West 5th Street, Suite 4153
                          Austin, Texas 78701
                          (512)391-8792






Proceedings reported by computerized stenography,
transcript produced by computer-aided transcription.
</pre>

| | | |
|---|---|---|
| 15:11:21 | 1 | THE CLERK: Court calls: A 18-CR-0410, <u>United</u> |
| 15:11:25 | 2 | <u>States vs. Defendant 17, Carlos Alberto Zamudio</u>, for |
| 15:11:29 | 3 | sentencing. |
| 15:11:30 | 4 | MR. GARDNER: Good afternoon, your Honor. |
| 15:11:31 | 5 | Doug Gardner for United states. |
| 15:11:33 | 6 | THE COURT: Mr. Gardner. |
| 15:11:33 | 7 | MR. ARANA: Victor Arana on behalf of Mr. |
| 15:11:36 | 8 | Zamudio. |
| 15:11:36 | 9 | THE COURT: Good afternoon, Mr. Arana. |
| 15:11:38 | 10 | And you are Carlos Alberto Zamudio, Jr.? |
| 15:11:43 | 11 | THE DEFENDANT: Yes, sir. |
| 15:11:44 | 12 | THE COURT: You know we were set for 3:00 today, |
| 15:11:46 | 13 | sir. |
| 15:11:46 | 14 | THE DEFENDANT: Yes, sir. I apologize. |
| 15:11:49 | 15 | THE COURT: All right. You had one place to be |
| 15:11:51 | 16 | today. And it shows me that maybe you're not taking this |
| 15:11:55 | 17 | as seriously as you should. |
| 15:11:56 | 18 | THE DEFENDANT: No, sir. I am. I thought I was |
| 15:11:58 | 19 | supposed to be here at 2:30. |
| 15:12:00 | 20 | THE COURT: So you thought you were here early? |
| 15:12:05 | 21 | THE DEFENDANT: Yeah, I was. |
| 15:12:06 | 22 | THE COURT: Okay. All right. I'm sure Mr. Arana |
| 15:12:09 | 23 | told you 3:30, if I know him. |
| 15:12:13 | 24 | MR. ARANA: Probably, your Honor. I apologize. |
| 15:12:13 | 25 | THE COURT: Not at all. |

15:12:19   1            Mr. Zamudio, I know that you understand that the
15:12:20   2    purpose of this hearing today is to impose a sentence in
15:12:26   3    your case.  In a few moments, I'll give you the
15:12:28   4    opportunity to say anything that you'd like to say before
15:12:30   5    I impose your sentence; however, before we do that, I need
15:12:34   6    to ask you a few questions.
15:12:36   7            First of all, do you believe that before today,
15:12:39   8    you've had a sufficient opportunity to confer with Mr.
15:12:42   9    Arana to prepare for this hearing today?
15:12:44   10           THE DEFENDANT:  Absolutely, sir.  Yes.
15:12:48   11           THE COURT:  During your conversations with him,
15:12:49   12   did he go over with you the presentence investigation
15:12:50   13   report that the probation office prepared in your case?
15:12:53   14   And did he talk to you about the federal sentencing
15:12:57   15   guidelines and how those have been applied in your case?
15:12:59   16           THE DEFENDANT:  Yes, sir, many times.
15:13:00   17           THE COURT:  All right.  Mr. Arana, do you believe
15:13:03   18   that you've had a sufficient opportunity with your client
15:13:06   19   to prepare for this case today?
15:13:09   20           MR. ARANA:  Yes, sir.
15:13:09   21           THE COURT:  And during your discussions with him,
15:13:11   22   did you talk to him in detail about the presentence
15:13:16   23   investigation report?  And did you explain to him how the
15:13:23   24   federal sentencing guidelines operate and how they were
15:13:25   25   applied in his case?

15:13:26  1        MR. ARANA: Yes, sir.
15:13:27  2        THE COURT: Do you have any objections to the
15:13:28  3  report itself? I know initially, you did have one
15:13:30  4  objection?
15:13:31  5        MR. ARANA: We filed an objection, but we chose
15:13:34  6  to withdraw it. Or we choose to withdraw it.
15:13:36  7        THE COURT: Okay. Very good.
15:13:37  8        Mr. Gardner, are there any objections from the
15:13:39  9  government?
15:13:40  10       MR. GARDNER: There are none, your Honor.
15:13:41  11       THE COURT: Without objection, then I will adopt
15:13:43  12 the findings of the presentence investigation report and
15:13:45  13 make them a part of the record for purposes of this
15:13:47  14 hearing.
15:13:49  15       Mr. Zamudio, what I want to do now is to talk to
15:13:52  16 you about the range of punishment that you're facing
15:13:55  17 today, the maximum possible punishment that you're facing,
15:14:01  18 then what the federal sentencing guidelines are
15:14:04  19 recommending in your case. And then, finally, we'll talk
15:14:06  20 about the plea agreement in your case.
15:14:09  21       For the offense of conspiring to possess with
15:14:12  22 intent to distribute cocaine, to which you've pled guilty,
15:14:16  23 there is a maximum possible term of imprisonment of 20
15:14:19  24 years, followed by a term of supervised release of at
15:14:23  25 least three years, and that term could be up to life.

15:14:27  1   There's a potential fine in this case of up to $1 million,
15:14:31  2   in addition to a $100 mandatory special assessment under
15:14:34  3   the Victims of Crimes Act.
15:14:37  4            Do you understand what the maximum possible
15:14:40  5   punishment is today?
15:14:41  6            THE DEFENDANT:  Yes, sir.
15:14:41  7            THE COURT:  Okay.  Now, the federal sentencing
15:14:45  8   guidelines were applied in your case.  The offense level
15:14:47  9   was found to be level 21 and your Criminal History
15:14:51 10   Category, a level I.  As a result, the guidelines
15:14:55 11   recommend that I sentence you to a term of custody of
15:14:57 12   between 37 and 46 months, followed by a term of supervised
15:15:02 13   release of three years.  The guidelines recommend a fine
15:15:06 14   of at least $15,000, in addition to that $100 mandatory
15:15:10 15   special assessment.
15:15:13 16            Do you understand what the federal sentencing
15:15:16 17   guidelines have recommended in your case?
15:15:17 18            THE DEFENDANT:  Yes, sir.
15:15:18 19            THE COURT:  Okay.  All right.  Mr. Arana, is
15:15:23 20   there anything you'd like to say on behalf of your client
15:15:26 21   at this time?
15:15:27 22            MR. ARANA:  Yes, sir.
15:15:27 23            And just to start off, I may have told Carlos
15:15:30 24   3:30.  Every time that he's met with me, he's been
15:15:33 25   punctual and I've never had a problem with that.  I had a

15:15:36  1  hectic week.  I don't have a secretary, so if he thought
15:15:39  2  3:30, I'm sure that he would have got that from me and I
15:15:42  3  apologize.
15:15:42  4              THE COURT:  That's what I thought, too.
15:15:43  5              MR. ARANA:  So again, in terms of punishment and
15:15:45  6  looking at the case, Mr. Zamudio or Carlos is almost 50
15:15:51  7  years old.  I think he's 47 or 48 years old with no
15:15:54  8  criminal history.  And in this case, you know, I was
15:15:58  9  really impacted by the fact that he dabbled in it and he
15:16:01  10 shouldn't have.  But it appears that he voluntarily
15:16:04  11 assisted in doing that sometime before he was arrested,
15:16:07  12 and then, he was arrested.
15:16:08  13             So I think that the transaction that we're
15:16:11  14 looking at is, I think, March of 2018.  And then, I think
15:16:14  15 the indictments came down December, or something like
15:16:17  16 that, and then, he was arrested in January.
15:16:19  17             So I think he's in a bit different position than
15:16:22  18 somebody who is still active and then, you know, when they
15:16:25  19 search their house, they find stuff, and they're sort of
15:16:28  20 stopped by the police versus stopping themselves.  And
15:16:32  21 then, of course, you know, he's described as a multi-ounce
15:16:36  22 dealer.  And I think ounce is key that it's much --
15:16:39  23 obviously much lower than kilograms or anything higher
15:16:42  24 than that.  So he makes a bad decision to get in this but
15:16:46  25 then, at some point, sort of decides that, for whatever

```
15:16:49   1  when, he doesn't want to do this.  And it's not the police
15:16:51   2  that help him make that decision.  He makes that decision
15:16:53   3  for himself.
15:16:54   4              And then, what's he being done since he's been on
15:16:59   5  pretrial release?  He's been on pretrial release for a
15:17:01   6  very long time, and we haven't been before the Court on
15:17:04   7  any sort of violations.  And I know that being on pretrial
15:17:06   8  release isn't terribly onerous.  Basically just stay out
15:17:09   9  of trouble and be where you're supposed to.  But we do
15:17:12  10  have people who get in trouble and get revoked, and he's
15:17:14  11  not one of those folks.
15:17:17  12              And then, the other thing he did was -- and your
15:17:20  13  Honor knows about our filings.  I think the big impetus
15:17:24  14  behind our filings was, he makes a decision that he wants
15:17:28  15  to go into a certain career, and he's worried about how
15:17:30  16  it's going to look to have a felony.  I don't know that
15:17:33  17  it's he doesn't want to take responsibility.  He just
15:17:34  18  wishes there was a way not to have a felony.  And
15:17:38  19  unfortunately, in our federal system, we don't have very
15:17:40  20  robust diversion programs and things like that.
15:17:44  21              So I think that's what caused us to take a hard
15:17:48  22  look at the evidence.  And then, of course, being in my
15:17:50  23  position, you know, I know that coming in here and filing
15:17:51  24  a motion to withdraw your guilty plea could set off
15:17:54  25  Pandora's box.  So it's a tough thing to do.  But I
```

15:17:58  1  certainly think it's a legitimate question, you know, to
15:18:00  2  ask what was the evidence.  We ask the defendants that all
15:18:04  3  the time.
15:18:04  4         So he takes the time and he goes to school, and
15:18:08  5  he made a significant commitment and financially and in
15:18:10  6  terms of money in going to this IT boot camp.  And I've
15:18:14  7  heard of that IT boot camp from other places.  I have
15:18:17  8  veterans in my veterans court who do that, and it's
15:18:20  9  apparently a very good program and they apparently -- at
15:18:23  10 U.T. and they have a very good placement rate.  And all
15:18:26  11 the vets that I know that have gone through that have gone
15:18:28  12 on to have good jobs.  So even though it's not a four-year
15:18:32  13 degree, or something like that, it certainly is a degree
15:18:34  14 that's in demand and gives somebody a good job.
15:18:36  15         So with all that said, we come before the Court.
15:18:39  16 And there's a lot of competing considerations.  I mean, to
15:18:45  17 say you just have to go on probation, maybe the feeling is
15:18:47  18 he really didn't have to pay for what he did wrong.  I
15:18:50  19 mean, I could see that being -- you know, up until this
15:18:53  20 point, he's basically just had to check in and to say, you
15:18:56  21 know, you're kind of excused from it, I could see that
15:18:58  22 being sort of an issue.
15:19:00  23         I know in the federal -- when we take probation
15:19:03  24 in state, you know, we lump on 200 hours of community
15:19:07  25 service.  We lump on a bunch of things that keeps somebody

|          |    |                                                                        |
|----------|----|------------------------------------------------------------------------|
| 15:19:09 | 1  | thinking about what they did for some time, and it kind of             |
| 15:19:13 | 2  | is sort of a payback for what you did.                                 |
| 15:19:17 | 3  | I could see in this case, if the Court -- he is                        |
| 15:19:20 | 4  | statutorily eligible for probation.  I could see the Court             |
| 15:19:23 | 5  | imposing conditions, weekends in jail, for example, take               |
| 15:19:26 | 6  | away some of his free time for some period of time.  At                |
| 15:19:30 | 7  | least if something like that was done, he wouldn't upset               |
| 15:19:34 | 8  | the sort of career he has going.  I mean, he can support               |
| 15:19:37 | 9  | himself.  A big purpose of going to prison is to learn a               |
| 15:19:40 | 10 | trade so that when you get out, you'll be able to support              |
| 15:19:43 | 11 | yourself.  Well, he's kind of already done that for                    |
| 15:19:46 | 12 | himself.  But again, I could see that the Court would want             |
| 15:19:48 | 13 | to impose something to make him make up for what's                     |
| 15:19:52 | 14 | happened.  So that's an idea.                                          |
| 15:19:56 | 15 | Another idea is some sort of fine that would                           |
| 15:19:59 | 16 | require some periodic payments for some time so every                  |
| 15:20:02 | 17 | time, you know, some percentage of his check, half, a                  |
| 15:20:05 | 18 | quarter, whatever, he has to pay back in terms of a fine               |
| 15:20:08 | 19 | on a payment plan.  That would also keep him thinking                  |
| 15:20:11 | 20 | about what he did and make some reparation.                            |
| 15:20:14 | 21 | So, you know, there's several purposes of sending                      |
| 15:20:17 | 22 | someone to prison.  One of them is, we've just gotta get               |
| 15:20:20 | 23 | this guy off the street because he's just pure                         |
| 15:20:23 | 24 | destruction.  I don't see that being Carlos.  I mean, he               |
| 15:20:25 | 25 | dealt for a little while, he desisted.  I don't think                  |

15:20:28  1  there's any chance that he's going to go back to doing
15:20:31  2  that. So I don't think incapacitation rationale really
15:20:34  3  fits. Training somebody, okay? Let's give this person
15:20:37  4  some tools that he didn't have before so that he doesn't
15:20:40  5  go back to crime. Those are the folks that get plumbing
15:20:44  6  certificates, electrician certificates, barber
15:20:46  7  certificates. But he's already got his IT, so he doesn't
15:20:50  8  really need that.
15:20:51  9            So again, I think the only purpose in sending him
15:20:52  10 back will be to make up for what he's done, to give him
15:20:55  11 his penance for what he's committed, and I think that that
15:20:59  12 can be done in a way that doesn't require incarceration.
15:21:03  13 I certainly think that our federal probation officers are
15:21:06  14 more than capable of supervising someone, and I wish that
15:21:10  15 we used that option more.
15:21:12  16           So when I look at if there's ever a case of
15:21:14  17 somebody who -- if this was a state case, I don't even
15:21:18  18 think there would be much of a discussion. He'd be going
15:21:20  19 on probation and he'd have conditions and five years,
15:21:23  20 seven years, 10 years, something like that, with the
15:21:26  21 quantity of community service hours and a fine to pay off.
15:21:30  22           Unfortunately, in our system in federal probation
15:21:33  23 is often viewed as just a zero to three, zero to six,
15:21:37  24 you're eligible for probation, otherwise, we're really not
15:21:39  25 going to consider it. But I do think that in this case.

15:21:45  1   Gone a very long part of his life with no criminal
15:21:48  2   history.  Did this for a short time, voluntarily desisted
15:21:52  3   and has some tools to be a productive citizen.
15:21:55  4          I think if there's a case that probation would be
15:21:57  5   appropriate, I think it's this case.  And that's -- I know
15:22:02  6   it's a little bit outside of the box, but I certainly
15:22:04  7   think it's a reasonable sentence, and that's the sentence
15:22:07  8   that I'd ask the Court to impose.
15:22:08  9          THE COURT:  Thank you very much.
15:22:10  10         Mr. Zamudio, I'll now give you the opportunity to
15:22:13  11  say anything you would like to say.  You don't have to
15:22:15  12  speak.  You can rely on the words of your lawyer.  But if
15:22:19  13  there is anything you'd like to say, I'd be happy to hear
15:22:21  14  from you now.  Feel free to take off your mask if you do
15:22:23  15  like to speak.
15:22:24  16         THE DEFENDANT:  Sir, I'm a little nervous so I
15:22:26  17  rather just have my lawyer talk for me.
15:22:28  18         THE COURT:  Sure.  That's fine and that's not
15:22:30  19  unusual.  That's fine.  Okay.
15:22:32  20         Anything more, Mr. Arana?
15:22:34  21         MR. ARANA:  No, sir.  I'd just submit the
15:22:35  22  sentencing memorandum.
15:22:36  23         THE COURT:  Yes.  And I -- for the record, I did
15:22:37  24  receive and review your sentencing memorandum.  Thank you.
15:22:40  25         Mr. Gardner.

15:22:41  1          MR. GARDNER:  Thank you, your Honor.
15:22:43  2          Just a few things that I'd just ask the Court
15:22:45  3  take in consideration is, we did make a recommendation for
15:22:48  4  not more than 24 months.  That was with Mr. Young when he
15:22:53  5  was his first attorney, and I think that kind of played,
15:22:56  6  at least in my mind, what I felt was appropriate, given
15:22:58  7  Mr. Zamudio's characteristics involved in this case.
15:23:03  8  Twenty-four months was appropriate for us.
15:23:05  9          He did have an opportunity to satisfy the safety
15:23:08 10  valve criteria but did not avail himself of that, so I'm a
15:23:11 11  little concerned.  I think that can be explained.  And
15:23:13 12  giving the benefit of the doubt to Mr. Zamudio, that was
15:23:16 13  also in the period where he was contemplating withdrawing
15:23:19 14  his plea.  And I do recognize he doesn't have any criminal
15:23:23 15  history, but I think those are factors the Court should
15:23:26 16  consider.
15:23:27 17          I don't necessarily like the state argument --
15:23:30 18  state court argument.  In Williamson County, he'd probably
15:23:34 19  get more time than he would here, which is Travis County.
15:23:36 20  So I know the Court is very familiar with the local
15:23:38 21  landscape of the state.  I don't necessarily appreciate
15:23:42 22  that particular viewpoint.  But I will say that I did make
15:23:47 23  a recommendation of not more than 24 months rather than
15:23:52 24  try to get an agreement between all the parties and
15:23:55 25  presenting 24-month sentence, if that makes sense to the

15:23:58  1  Court.
15:23:59  2          So those are just my thoughts, your Honor.
15:24:01  3  Obviously you have a range of zero to 24 months.  I think
15:24:05  4  some punishment is required just to make sure it doesn't
15:24:09  5  happen just for impact but the other defendants in this
15:24:12  6  case.
15:24:12  7          THE COURT:  Thank you very much, Mr. Gardner.
15:24:15  8          And, Mr. Zamudio, I have reviewed information
15:24:18  9  about your background, about your offense, and I think
15:24:23  10 your lawyer has done a good job of summing up the
15:24:26  11 considerations that I'm required to make in imposing a
15:24:30  12 sentence.  They are many and they serve different
15:24:33  13 interests.  One of them, though, that I do -- and I
15:24:40  14 generally agree with his analysis, and I think punishment
15:24:44  15 for punishment sake is not often something that I am a big
15:24:49  16 fan of.
15:24:50  17         But there is something to the -- what Mr. Arana,
15:24:57  18 I think, refers to as kind of paying penance, and that is
15:25:02  19 the idea that when someone commits a criminal act -- and
15:25:06  20 in this case, it was not an insignificant amount of
15:25:09  21 cocaine that you personally were involved with here, that
15:25:15  22 there is something to be said for being punished for that.
15:25:20  23 But part of it, too, is to send a message to other people
15:25:24  24 that there are consequences to this kind of thing and
15:25:27  25 especially, I think, was it a kilo of cocaine that is

15:25:32  1  attributable to you?  Now, that's a significant amount of
15:25:34  2  drugs.  And I think that to give you a probated sentence,
15:25:40  3  frankly, would send the wrong message to folks in your
15:25:45  4  position who need to know that that's a serious offense
15:25:48  5  and that there are going to be serious consequences.
15:25:51  6           On the other hand, I do believe that the
15:25:53  7  guidelines, in particular, and even the agreement that
15:25:57  8  you've reached with the government do sort of go beyond
15:26:01  9  what I think is necessary to send the message to you and
15:26:06  10 to others that, A, this is conduct that we won't tolerate
15:26:10  11 and, B, to discourage you and others from doing it in the
15:26:14  12 future.
15:26:15  13          So I will vary from the guidelines downward.  I
15:26:20  14 do believe a custodial sentence is warranted in this case.
15:26:23  15 I'm going to sentence you to a term of incarceration of 12
15:26:27  16 months and one day.  There is significance to that
15:26:32  17 sentence that Mr. Arana will tell you.  It's a little
15:26:34  18 better than it sounds potentially because it will give you
15:26:36  19 the opportunity to shorten that sentence in the right
15:26:42  20 circumstances.
15:26:43  21          Upon release from imprisonment, I'm going to
15:26:46  22 order that you be placed on supervised release for a term
15:26:48  23 of three years.  While you're on supervised release,
15:26:51  24 you're not to commit any other federal, state or local
15:26:53  25 crime.  And you're to comply with the mandatory and

```
15:26:56   1   standard conditions that have been adopted by the Court,
15:27:00   2   including that you submit yourself, your property, your
15:27:03   3   electronic devices, your home, and your vehicle to a
15:27:06   4   search by the probation office, in the event that they
15:27:09   5   believe that you're in violation of any of the terms of
15:27:12   6   your supervision.
15:27:13   7              I find that you don't have the ability to pay a
15:27:15   8   fine, so I'm going to waive a fine in this case.  And I
15:27:19   9   will -- but I do have to order that you pay the $100
15:27:26  10   mandatory special assessment.
15:27:26  11              I do want to recognize the good work you've done
15:27:29  12   while you're out bond.  That's not for nothing.  And I
15:27:31  13   will tell you that had you not done so well on bond, and
15:27:35  14   especially the program that you were in, and shown me that
15:27:38  15   you do have the ability and the intention to get out and
15:27:42  16   straighten up, your sentence, I can just tell you, would
15:27:46  17   have been significantly higher.  So don't think you didn't
15:27:48  18   do yourself a great favor and your lawyer by pointing that
15:27:53  19   out.
15:27:54  20              So I think that the sentence that you will serve
15:27:58  21   will not set you back too much in your -- a lot of people,
15:28:02  22   I worry that it's going to take them off of a track and
15:28:04  23   they'll never get back on it.  I don't think that's true
15:28:06  24   for you.  I think it's a reasonable sentence that will
15:28:08  25   show you that we're serious about this, but it won't --
```

```
15:28:11   1   you won't lose hope that you're not going to be able to
15:28:15   2   get out and get on the right track and be a productive
15:28:18   3   citizen.  I think you will.
15:28:19   4           So with that, let me tell, you, you have the
15:28:22   5   right to appeal the sentence I've given you today.  And if
15:28:25   6   you want to appeal it, you should talk to Mr. Arana about
15:28:28   7   how to do that and the time limits for doing it.  And
15:28:30   8   finally, I will seal this presentence investigation report
15:28:32   9   so that it's available only in the event that you do
15:28:34  10   appeal your sentence.
15:28:36  11           Mr. Arana, is there anything further today?
15:28:39  12           MR. ARANA:  Yes, your Honor, two things.  Ask
15:28:41  13   that he be allowed to self-surrender.
15:28:43  14           THE COURT:  Yes.  Any objection from the
15:28:44  15   government?
15:28:44  16           MR. GARDNER:  None, your Honor.
15:28:45  17           THE COURT:  Okay.  Mr. Zamudio, as long as you
15:28:52  18   can tell me that you will continue to comply with the
15:28:55  19   conditions that you've been under and that you will show
15:28:58  20   up when and where you're ordered to for the service for
15:29:00  21   your sentence, I'll allow you to remain out on bond.
15:29:03  22           Will you do that?
15:29:04  23           THE DEFENDANT:  Yes, sir.
15:29:04  24           THE COURT:  Okay.  Very good.
15:29:06  25           MR. ARANA:  The only other request is a facility
```

```
15:29:08   1   close to Austin as possible for a recommendation.
15:29:10   2             THE COURT:  I will make that recommendation.
15:29:11   3   Okay.
15:29:11   4             Mr. Gardner, anything further from the
15:29:13   5   government?
15:29:13   6             MR. GARDNER:  Your Honor, Mr. Zamudio's complied
15:29:15   7   with the plea agreement.  We would move to miss the
15:29:18   8   remaining charges in this case.
15:29:18   9             THE COURT:  And I'll grant that motion.
15:29:21  10             MR. GARDNER:  Thank you.  That's all we have.
15:29:23  11             THE COURT:  Thank you.  Mr. Zamudio, good luck
15:29:24  12   and I hope we don't meet again.
15:29:27  13             THE DEFENDANT:  Yes, sir.  I wanted to, say, I
15:29:29  14   apologize for the inconvenience, sir.  And, of course, I
15:29:35  15   disagree with things because I want to be a free man
15:29:39  16   without a record.  But I do appreciate you all serving the
15:29:44  17   community and keeping our streets safe.  And I want to
15:29:46  18   thank you and Mr. Gardner.
15:29:48  19             THE COURT:  Thank you, sir.  Appreciate it and we
15:29:50  20   want to welcome you back into the law-abiding community,
15:29:53  21   okay?
15:29:54  22             THE DEFENDANT:  Thank you, sir.
15:29:55  23             THE COURT:  Okay.  Very good.  Thank you.
          24             (End of proceedings.)
          25
```

1                        * * * * * *

2

3

4    UNITED STATES DISTRICT COURT  )

5    WESTERN DISTRICT OF TEXAS)

6

7       I, LILY I. REZNIK, Certified Realtime Reporter,

8    Registered Merit Reporter, in my capacity as Official

9    Court Reporter of the United States District Court,

10   Western District of Texas, do certify that the foregoing

11   is a correct transcript from the record of proceedings in

12   the above-entitled matter.

13      I certify that the transcript fees and format comply

14   with those prescribed by the Court and Judicial Conference

15   of the United States.

16      WITNESS MY OFFICIAL HAND this the 20th day of July,

17   2021.

18

19

20                              */s/Lily I. Reznik*
                                LILY I. REZNIK, CRR, RMR
21                              Official Court Reporter
                                United States District Court
22                              Austin Division
                                501 W. 5th Street,
23                              Suite 4153
                                Austin, Texas 78701
24                              (512)391-8792
                                SOT Certification No. 4481
25                              Expires:  1-31-23